**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

RICHARD HUDSON,

        Plaintiff,

    v.

PRESTON MORRIS, and JIMMY
MCDUFFIE, Sheriff of Effingham County,

        Defendants.

CIVIL ACTION NO.: 4:20-cv-120

**O R D E R**

    This action is before the Court on Defendant Preston Morris and Defendant Jimmy McDuffie's Motion to Dismiss Plaintiff Richard Hudson's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b).[1] (Doc. 10.) Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments and that Defendants are liable to him under state law. (Doc. 9.) Plaintiff's claims arise out of an incident during which Defendant Morris, a deputy sheriff with the Effingham County Sheriff's Department, allegedly assaulted and battered Plaintiff while he was handcuffed. (Id. at p. 2.) Defendants move for the dismissal of all claims on the basis of Plaintiff's alleged failure to abide by the service requirements set forth in Federal Rule of Civil Procedure 4 and also on the basis that Plaintiff's Amended Complaint constitutes an improper "shotgun pleading."

---

[1]  Before Plaintiff filed his Amended Complaint, Defendants filed a Motion to Dismiss his original complaint. (Doc. 4.) Plaintiff's Amended Complaint, (doc. 10), however, superseded the original complaint and is now the operative pleading in this case. See Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007) ("[A]n amended complaint supersedes the initial complaint and becomes the operative pleading in the case."). Accordingly, the Court **DENIES AS MOOT** Defendants' Motion to Dismiss the original complaint. (Doc. 4.)

(Doc. 10, pp. 3–5, 12–15.)  Alternatively, Defendants move for dismissal of the federal and state law claims asserted against them in their official capacities and the state law claims asserted against Defendant McDuffie in his individual capacity on the basis of Eleventh Amendment immunity, official immunity, sovereign immunity, and/or the failure to provide ante-litem notice.  (Id. at pp. 5–11.)  For the following reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss the Amended Complaint.  (Id.)  The Court further **ORDERS** Plaintiff to file a Second Amended Complaint following the parameters set forth in the Conclusion section, infra.

## BACKGROUND

According to the allegations contained in the Amended Complaint, the events giving rise to this suit occurred on June 2, 2018.  (Doc. 9, p. 2.)  On that day, while carrying out the arrest of Plaintiff, Defendant Morris, who was working as a deputy sheriff in Effingham County at the time, "repeatedly struck [Plaintiff] in the face and head after . . . Plaintiff's hands were cuffed behind his back."  (Id.)  Defendant Morris also used "racial slurs" and "profane language" when speaking to Plaintiff.  (Id.)

On June 1, 2020, Plaintiff initiated this action against Defendants pursuant to 42 U.S.C. § 1983.  (Doc. 1.)  In his Amended Complaint, Plaintiff alleges that Defendant Morris's "wrongful assault and battery" and use of excessive force "caused . . . Plaintiff to be deprived of his constitutional rights, including but not limited to the rights afforded in the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution."  (Doc. 9, pp. 2–3.)  Plaintiff also alleges that Defendant McDuffie is liable for Defendant Morris's conduct because he, as Sheriff of Effingham County, either "has a policy which authorizes the use of force without legal cause or . . . failed to adopt a policy prohibiting the use of force except under appropriate circumstances."  (Id. at p. 3.)  Plaintiff further alleges that Defendant McDuffie is "liable in his official capacity as

Sheriff because he has failed to make his deputies accountable for wrongful conduct" and because "he hired and retained [Defendant Morris] with actual knowledge of his repeated misconduct involving the deprivation of civil rights while acting as a law enforcement officer." (Id.) Plaintiff seeks the recovery of actual damages and punitive damages from each Defendant as well as attorney's fees and litigation costs. (Id. at p. 4.)

Plaintiff endeavored to serve Defendants with this lawsuit on two occasions. The first effort occurred on August 31, 2020, when Plaintiff's process server "served the summons on" Brenda Stewart at the Effingham County Sheriff's Office. (Doc. 4-2, pp. 1–2.) The Proof of Service forms, which the process server declared under penalty of perjury contain true information, indicate that Stewart was "designated by law to accept service of process on behalf of . . . [the] Effingham County Sheriff's [Department]" and that Stewart is a "civil process administrator." (Id.) However, according to Stewart's Affidavit, her position in the Effingham County Sheriff's Department is "Administrative Assistant Civil Division," and she has "no legal authority to accept service on behalf of the Effingham County Sheriff's Office, Effingham County Sheriff Jimmy McDuffie, or Preston Morris." (Doc. 4-3, pp. 1–2.) Plaintiff's second effort to serve Defendants occurred on September 30, 2020, when Plaintiff's process server "personally served the summons" on both Defendants. (Doc. 7, pp. 2, 4.)

Defendants filed a Motion to Dismiss Plaintiff's original complaint on September 18, 2020. (Doc. 4.) After Plaintiff filed his Amended Complaint on October 2, 2020, Defendants filed their Motion to Dismiss the Amended Complaint, (doc. 10). In their Motion, Defendants argue: (1) that all claims against them should be dismissed because Plaintiff failed to properly serve and perfect service upon them; (2) that Eleventh Amendment immunity bars Plaintiff's federal claims against them in their official capacities; (3) that official immunity bars Plaintiff's state law claims against

Defendant McDuffie in his individual capacity; (4) that sovereign immunity bars Plaintiff's state law claims against Defendants in their official capacities; (5) that Plaintiff's state law claims against Defendants in their individual capacities are barred by Plaintiff's failure to provide a statutorily sufficient ante-litem notice; and (6) that Plaintiff's Amended Complaint is an improper shotgun pleading.  (See generally doc. 10-1.)  Plaintiff subsequently filed a Response.  (Doc. 11.)

**DISCUSSION**

## I.      Service of Process

Defendants first argue that dismissal is warranted under Federal Rule of Civil Procedure 12(b) for failure to perfect service in accordance with the applicable provisions of Rule 4, which "requires a plaintiff to serve each defendant with a copy of both the summons and the complaint" and specifies the proper manners and methods for doing so.  Cooley v. Ocwen Loan Servicing, LLC, 729 F. App'x 677, 682 (11th Cir. 2018) (per curiam).  Because service of process is a jurisdictional requirement, the Court lacks personal jurisdiction over a defendant who has not been properly served.  See Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990).  Where a plaintiff attempts to serve a defendant and the validity of such service is contested, "the standards of proof governing motions to dismiss for lack of personal jurisdiction" are applicable.  Kammona v. Onteco Corp., 587 F. App'x 575, 578 (11th Cir. 2014) (per curiam) (citations omitted).  "As with a challenge to jurisdiction . . . the party on whose behalf service is made has the burden of establishing its validity."  Familia De Boom v. Arosa Mercantil, S.A., 629 F.2d 1134, 1138 (5th Cir. 1980) (citations omitted).[2]

---

[2]  In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former United States Court of Appeals for the Fifth Circuit handed down prior to October 1, 1981.

### A.     Service Requirements for State Officials Sued in their Official and Individual Capacities

Plaintiff appears to be asserting claims against both Defendants in both their individual and their official capacities.  (See footnote 6, infra.)  Generally, when a plaintiff is suing a state official in his individual capacity, service of process is governed by Federal Rule of Civil Procedure 4(e).  Rule 4 is silent, however, as to the proper method of service on a state officer sued in his official capacity, though Rule 4(j)(2) addresses service on a state or local *government*.  The Court is not aware of any Eleventh Circuit precedent directly addressing this issue of how to serve a state officer sued in his official capacity.  Indeed, "[s]ome courts have held that service of process for public employees sued in their official capacity is also governed by the rule applicable to serving individuals," while other "courts have held that state officers sued in their official capacities must be served in accordance with Rule 4(j)."  4B Wright & Miller, Federal Practice & Procedure § 1109 (4th ed.); compare Caisse v. DuBois, 346 F.3d 213, 216 (1st Cir. 2003) ("[S]ervice of process for public employees sued in their official capacities is governed by the rule applicable to serving individuals."); with Moore v. Hosemann, 591 F.3d 741, 747 (5th Cir. 2009) ("A number of other courts have held that state officers sued in their official capacities are subject to service under [R]ule 4(j) or its predecessor.").[3]  In this case, the Court need not resolve this issue because

---

[3]  District courts within the Eleventh Circuit also appear split on the issue.  Compare Davis v. Green, No. 1:12-cv-03549-JOF, 2013 WL 12063901, at *2 n.1 (N.D. Ga. May 15, 2013) ("[C]ourts generally hold that when defendants are sued in their individual and official capacities, service must be made upon defendants in a manner to satisfy individual service.") and Gueli v. United States, No. 806CV1080T27MSS, 2006 WL 3219272, at *4 (M.D. Fla. Nov. 6, 2006) ("An official capacity claim against a state official may be effected under the rules for individual capacity suits."), with Garvich v. Georgia, No. 3:20-cv-122-TCB, 2020 WL 8766016, at *4 n.4 (N.D. Ga. Dec. 8, 2020) ("To the extent that Garvich seeks to sue any Defendant in his or her official capacity, those claims would be governed by the service rules of 4(j)(2) . . . .") and Horton v. Maldonado, No. 1:14-cv-0476-WSD, 2014 WL 6629743, at *3 (N.D. Ga. Nov. 21, 2014) ("Officers sued in their official capacities must, under Federal Rule of Civil Procedure 4(j)(2), be served in the same manner as cities.").

Plaintiff's second effort to serve Defendants satisfied both approaches, and for the reasons described in the following subsection, the Court deems this service timely.

Under Rule 4(e)(2), "an individual . . . may be served" by: (1) "delivering a copy of the summons and of the complaint to the individual personally;" (2) "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there;" or (3) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2).  A plaintiff may also serve an individual by following the law of the state where the district court is located or where service is made.  Fed. R. Civ. P. 4(e)(1).  Here, that state is Georgia, and Georgia's relevant statute, O.C.G.A. § 9-11-4(e)(7), "prescribes rules for service on an individual in much the same manner as [Rule] 4(e)(2)." Melton v. Wiley, 262 F. App'x 921, 923 n.3 (11th Cir. 2008); compare O.C.G.A. § 9-11-4(e)(7), with Fed. R. Civ. P. 4(e)(2).

In contrast, under Rule 4(j)(2), a plaintiff must serve a "state, a municipal corporation, or any other state-created governmental organization that is subject to suit" by: (1) "delivering a copy of the summons and of the complaint to its chief executive officer;" or (2) "serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2).  Under Georgia law, to serve a sheriff in his official capacity, a plaintiff must deliver a copy of the summons to a chief executive officer, a clerk, or an authorized agent.  O.C.G.A. § 9-11-4(e)(5); see also Estate of Williams v. Douglas County, No. 1:16-CV-2913-ODE, 2017 WL 11448868, at *3 (N.D. Ga. Sept. 8, 2017) ("To serve Sheriff Miller in his official capacity as a state-created entity, Plaintiffs were required either to deliver a copy of the summons and complaint to the 'chief executive officer' or to follow state law, which in this case would have been a chief executive officer, a clerk, or an authorized agent." (citations omitted)).

Here, Plaintiff's first attempt to serve Defendants failed comply with either Rule 4(e) or 4(j)(2). As to Rule 4(e), the undisputed evidence shows that Stewart was not an authorized agent to accept service on behalf of Defendants in their individual capacities, and Plaintiff did not deliver a copy of the summons to Defendants personally or to their dwellings. As to Rule 4(j)(2), the undisputed evidence shows that Stewart was not authorized as an agent to accept service on behalf of Defendants, and Plaintiff does not argue that Stewart was the "chief executive officer" or a "clerk" of the Effingham County Sheriff's Office. However, Plaintiff's second attempt to serve Defendants satisfied both provisions. Pursuant to Rule 4(e), Plaintiff served Defendants personally, and pursuant to Rule 4(j)(2), Plaintiff served Defendant McDuffie, the "chief executive officer" of the Effingham County Sheriff's Office. See Fed. R. Civ. P. 4(j)(2). Thus, Plaintiff's second attempt to serve Defendants satisfied both Rule 4(e) and Rule 4(j)(2).

**B.  Time Requirements for Service**

The determination that Plaintiff's second attempt to serve Defendants satisfied Rule 4(e) and Rule 4(j)(2) does not end the Court's inquiry, however. To properly serve Defendants, Plaintiff was also required to comply with the time requirements mandated by Federal Rule of Civil Procedure 4(m). Pursuant to Rule 4(m), a plaintiff must serve the defendant "within 90 days after the complaint is filed." Fed. R. Civ. P. 4(m). "Proper service on a defendant within the time allowed under Rule 4(m) is a plaintiff's responsibility." Melton, 262 F. App'x at 922 (citing Fed. R. Civ. P. 4(c)(1); Lepone-Dempsey v. Carroll Cnty. Comm'rs, 476 F.3d 1277, 1280–81 (11th Cir. 2007)). Here, Plaintiff filed this suit on June 1, 2020, (doc. 1), and the second effort to serve Defendants occurred on September 30, 2020, (doc. 7, pp. 2, 4), nearly one month after the Rule 4(m) deadline expired. Therefore, Plaintiff's service on Defendants did not comply with Rule 4(m).

However, "the 90-day time period imposed by Rule 4(m) was not meant to be enforced harshly or inflexibly." Peddie v. InComm, No. 1:17-CV-4405-WSD-JSA, 2018 WL 3061927, at *4 (N.D. Ga. Mar. 22, 2018) (citing Floyd v. United States, 900 F.2d 1045, 1049 (7th Cir. 1990)). Instead, Rule 4(m) was "intended 'to be a useful tool for docket management, not an instrument of oppression.'" Id. (quoting Floyd, 900 F.2d at 1049).  Thus, when a plaintiff fails to serve the defendant properly within the time allotted by Rule 4(m), "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).  "Good cause exists only when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." Lepone-Dempsey, 476 F.3d at 1281 (quotation omitted).

Courts also retain discretion to extend the time for service of process even in the absence of good cause. Horenkamp v. Van Winkle & Co., Inc., 402 F.3d 1129, 1132 (11th Cir. 2005). Indeed, where "a plaintiff fails to show good cause for failing to effect timely service pursuant to Rule 4(m), the district court *must* still consider whether any other circumstances warrant an extension of time based on the facts of the case." Lepone-Dempsey, 476 F.3d at 1282 (emphasis added).  Examples of such circumstances include—but are not limited to—where "the applicable statute of limitations would bar the refiled action, or [where] the defendant is evading service or conceals a defect in attempted service." Horenkamp, 402 F.3d at 1132–33; see also First Sw. Fin. Servs., LLC v. Best Light, LLC, No. 13-20049-CIV-WILLIAMS, 2015 WL 12781193, at *1 (S.D. Fla. Apr. 15, 2015) ("In deciding whether to exercise discretion to extend the time for service, Courts consider a variety of other factors, including the possibility of prejudice to the defendant, the impact on the judicial proceedings, the reason for the delay, whether the defendant had actual notice, and whether the complaint was eventually served properly.").

Based on the circumstances of this case, the Court finds that Plaintiff's time to serve Defendants should be retroactively extended to when Plaintiff served Defendants on September 30, 2020.  First, the process server apparently believed, on August 31, 2020, that Brenda Stewart was authorized to accept service on behalf of Defendants, as the process server indicated on the initial Proof of Service forms that Stewart was "designated by law to accept service of process on behalf of . . . [the] Effingham County Sheriff's [Department]." (Doc. 4-2, pp. 1–2.)  While Stewart indicates in her Affidavit that she is not actually authorized to accept service on behalf of Defendants, Defendants do not provide any reason why it was not reasonable for Plaintiff to rely on the process server's declaration that he served an authorized agent of Defendants.  Further, although this first attempt at service was not actually effective, the Court notes that it was within Rule 4(m)'s 90-day deadline.  (See doc. 1 (original complaint filed on June 1, 2020); doc. 4-2, pp. 1–2 (proof of service showing Stewart served on August 31, 2020).)  Additionally, Plaintiff appears to have acted quickly to have Defendants properly served once he became aware that service on Stewart may not have been effective.  Defendants' initial Motion to Dismiss the original Complaint appears to have been the first indication to Plaintiff that service may have been defective, and Plaintiff's process server subsequently personally served each Defendant less than two weeks later.  (See doc. 7.)  Accordingly, Defendants were effectively served, in satisfaction of Rule 4(e) and Rule 4(j)(2), roughly one month after Rule 4(m)'s 90-day deadline expired. Defendants suffered no real prejudice due to this short delay in properly effectuating service.

The above circumstances illustrate that Plaintiff appears to have attempted in good faith to properly and timely serve Defendants and that his failure to do so was not a result of his own inadvertence or negligence.  Instead, the failure to timely effect service appears to have been a result of Plaintiff's reliance on the process server's mistaken belief that Brenda Stewart was

authorized to accept service on behalf of Defendants.  Thus, the Court finds that Plaintiff has shown good cause for his failure to timely serve Defendants.  Even if he had not, considering the totality of the circumstances, the Court exercises its discretion to retroactively extend the time for service of process.  Thus, the Court retroactively extends the deadline for service to September 30, 2020, the date that Plaintiff personally served Defendants.  See First Sw. Fi. Servs., LLC, 2015 WL 12781193, at *2 ("Courts have extended the time for service when a plaintiff, in attempting to serve process, relied on a statement by an individual that he or she was authorized to accept service on the defendant's behalf, even though that individual was not in fact authorized."); King v. Lumpkin, No. 1:11-cv-0549-WSD, 2012 WL 12888676, at *7 (N.D. Ga. Feb. 13, 2012) ("[T]he Court finds there is good cause for the failure to serve the summons and Complaint within the . . . period prescribed by Rule 4(m), because Plaintiff erroneously relied upon the inaccurate . . . proof of service provided by his process server.").  Accordingly, the Court **DENIES** Defendants' Motion to Dismiss the Amended Complaint to the extent it is based upon Plaintiff's alleged insufficient service.  (Doc. 10.)

## II.     Shotgun Pleading

Before addressing Defendants' arguments for dismissal, the Court addresses their assertion that Plaintiff's Amended Complaint is an improper shotgun pleading and that, if the Court does not dismiss Plaintiff's claims on other grounds, then the Court "should provide Plaintiff with one opportunity to fix the shotgun pleading defects."  (Doc. 10-1, pp. 12–15.)  "A district court has the inherent authority to control its docket and ensure the prompt resolution of lawsuits, which includes the ability to dismiss a complaint on shotgun pleading grounds."  Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018) (internal quotations omitted).  Shotgun pleadings

are pleadings that violate either Federal Rule of Procedure 8(a)(2)[4] or Rule 10(b).[5] <u>Weiland v.</u>
<u>Palm Beach Cnty. Sheriff's Office</u>, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit
has identified "four rough types" of shotgun pleadings: (1) "a complaint containing multiple counts
where each count adopts the allegations of all preceding counts;" (2) a complaint that contains
"conclusory, vague, and immaterial facts not obviously connected to any particular cause of
action;" (3) a complaint that fails to "separat[e] into a different count each cause of action or claim
for relief;" and (4) a complaint that "assert[s] multiple claims against multiple defendants without
specifying which of the defendants are responsible for which acts or omissions, or which of the
defendants the claim is brought against." <u>Id.</u> at 1321–23. "The unifying characteristic of all types
of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give
the defendants adequate notice of the claims against them and the grounds upon which each claim
rests." <u>Id.</u> at 1323.

Here, Plaintiff's Amended Complaint shares many characteristics of a shotgun pleading.
Specifically, Plaintiff's Amended Complaint does not clearly state each cause of action, does not
separate each claim into separate counts, and does not explicitly provide the exact legal basis for
each claim.[6] However, after a careful review of the pleadings, the Court finds that the Amended

---

[4] Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the
pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

[5] Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as
practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an
earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or
occurrence—and each defense other than a denial—must be stated in a separate count or defense." Fed. R.
Civ. P. 10(b).

[6] Defendants also point out that Plaintiff did not specify whether he was asserting claims against Defendants
in their individual capacities, or their official capacities, or both. (Doc. 10-1, pp. 15–16.) Though
preferable, "plaintiffs are not required to designate with specific words in the pleadings that they are
bringing a claim against defendants in their individual or official capacities, or both." <u>Young Apartments,</u>
<u>Inc. v. Town of Jupiter</u>, 529 F.3d 1027, 1047 (11th Cir. 2008). "When it is not clear in which capacity the
defendants are sued, the course of proceedings typically indicates the nature of the liability sought to be

Complaint is informative enough to permit a determination of the grounds for dismissal that have been presented by Defendants.  Moreover, if the Court abstained from addressing Defendants' Motion to Dismiss and required Plaintiff to first file a second Amended Complaint to re-plead his claims, a third round of dismissal motions would likely occur, leading to a waste of the parties'—and the Court's—resources.  Thus, the Court proceeds to address the arguments Defendants presented in their Motion to Dismiss.  However, following the issuance of this Order, Plaintiff must file a comprehensive operative complaint, the details of which are set forth in the Conclusion section, infra.

## III.   Claims against Defendants in their Official Capacities

### A.      Eleventh Amendment Immunity

Defendants argue that they are entitled to Eleventh Amendment immunity with regard to claims asserted against them in their official capacities.  (Doc. 10-1, pp. 5–8.)  "The Eleventh Amendment insulates a state from suit brought by individuals in federal court unless the state either consents to suit or waives its Eleventh Amendment immunity."  Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (footnote omitted).  "It is also well-settled that Eleventh Amendment immunity bars suits brought in federal court . . . when an 'arm of the State' is sued."  Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003).  "Whether a defendant is an 'arm of the state' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise."  Id.  To make this determination, the Eleventh

---

imposed."  Id.  Here, it appears from the face of the Amended Complaint that Plaintiff intended to sue Defendants in their official *and* individual capacities as Plaintiff seeks punitive damages against each Defendant, included Defendant McDuffie's title in the Amended Complaint's caption, and stated that Defendant McDuffie "is liable in his official capacity as Sheriff," (doc. 9, p. 3).  See Young Apartments, Inc., 529 F.3d at 1047–48 (observing that a request for punitive damages indicates an intent to sue government officials in their individual capacities and that the inclusion of an officer's title in a complaint's caption suggests an intent to sue that officer in his official capacity).

Circuit uses four factors: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Id. at 1309. Using this four-factor test, the Eleventh Circuit ruled in Manders that Georgia sheriffs are arms of the state when establishing use of force policies at jails and training and disciplining their deputies in those policies. Id. at 1328–29.

> Since Manders was decided in 2003, the relevant Georgia law remains essentially unchanged. Indeed, it is now "insurmountable" that Georgia sheriffs act as arms of the state—not as county officials . . . . In sum, Manders and its progeny dictate that where a sheriff and his deputies are performing their official and authorized duties as state actors—i.e. engaged in general law enforcement functions or making arrests pursuant to state law—they are entitled to Eleventh Amendment immunity from a [Section] 1983 claim for money damages or other retrospective relief brought against them in their official capacities.

Frederick v. Brown, No. 1:13-cv-176, 2015 WL 4756765, at *14 (S.D. Ga. Aug. 10, 2015) (citations omitted). Furthermore, because deputies, in their official capacities, are "employees of the sheriff," they are "entitled to Eleventh Amendment immunity" under appropriate circumstances as well. Scruggs v. Lee, 256 F. App'x 229, 232 (11th Cir. 2007) (citing Manders, 338 F.3d at 1311). Thus, the issue for the Court is whether Defendants were performing their official and authorized duties as state actors at the time of the at-issue incident.

Here, Plaintiff alleges that Defendant Morris committed a "wrongful assault and battery" and used "excessive force" while "illegally arrest[ing]" him, (doc. 9, p. 2; doc. 11, p. 3), and that Defendant McDuffie "has a policy which authorizes the use of force without legal cause;" "failed to make his deputies accountable for wrongful conduct;" and "hired and retained [Defendant Morris] with actual knowledge of his repeated misconduct involving the deprivation of civil rights while acting as a law enforcement officer." (Doc. 9, p. 3.) Thus, the functions at issue are a sheriff deputy's arrest of a suspect, a sheriff deputy's use of force while arresting a suspect, a sheriff's use of force policy, and a sheriff's supervision, discipline, and retainment of one of his deputies.

Courts in the Eleventh Circuit have consistently held that a Georgia sheriff and his deputies are arms of the state when undertaking these functions.  See Pellitteri v. Prine, 776 F.3d 777, 779 (11th Cir. 2015) (finding that a sheriff functioned as an arm of the state when he "exercis[ed] his power to hire and fire the deputies that enforce the laws of Georgia on his behalf"); Gray v. Royal, 181 F. Supp. 3d 1238, 1247 (S.D. Ga. 2016) ("[The Sheriff] was . . . acting as an 'arm of the state' when he made employment decisions, including the decision to retain Williams as a deputy sheriff . . . ."); Townsend v. Coffee County, 854 F. Supp. 2d 1345, 1352 (S.D. Ga. 2011) ("Investigatory stops and arrests fall squarely within the traditional law-enforcement responsibilities of a sheriff and his deputies.  . . .  [Therefore, the sheriff's deputy] is entitled to Eleventh Amendment immunity . . . ."); Temple v. McIntosh County, No. 2:18-CV-91, 2019 WL 287482, at *4 n.9 (S.D. Ga. Jan. 22, 2019) ("If the Eleventh Circuit found that the sheriff in Manders was an arm of the state based on the factors described above for use of force policy in a jail, then it stands to reason that Sheriff Jessup in this case is an arm of the State for any alleged policy decisions or discipline for his deputies regarding excessive force in arrests."); Moon v. Rockdale County, 188 F. Supp. 3d 1369, 1379 (N.D. Ga. 2016) (finding that a sheriff who performed the "law enforcement functions" of "hiring deputies to enforce criminal laws" and "providing policies, training and supervision for such officers" acted as an "arm of the state for Eleventh Amendment purposes"); Lewis v. Wilcox, No. 3:06-CV-29 (CDL), 2007 WL 3102189, at *9 (M.D. Ga. Oct. 23, 2007) ("Defendant Chapman was acting as an 'arm of the state' when promulgating use-of-force and seizure policies in the context of ordinary law enforcement.").  The Court agrees with the analyses contained in these cases, and Plaintiff has not presented any facts or argument to distinguish the case at hand from those addressed by this line of binding and persuasive authority.  Therefore, the Manders factors weigh heavily and clearly in favor of Defendants, and the Court need not repeat

14

the <u>Manders</u> analysis here.  Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss the Section 1983 claims brought against Defendants in their official capacities.

### B.    Ante-Litem Notice

Defendants also argue that any state law claims Plaintiff has asserted against them in their official capacities are barred by Plaintiff's failure to provide ante-litem notice.  (Doc. 10-1, p. 12.) Under Georgia law, "[a]ll claims against counties must be presented within 12 months after they accrue or become payable or the same are barred, provided that minors or other persons laboring under disabilities shall be allowed 12 months after the removal of the disability to present their claims."  O.C.G.A. § 36-11-1.  The "[f]ailure to present the County with formal written notice of the claim within the 12-month statutory period, or to present the claim to the County by suing and serving the County on the claim within that period, acts as a bar to the claim."  <u>Warnell v. Unified Gov't of Athens-Clarke Cnty.</u>, 763 S.E.2d 284, 286 (Ga. Ct. App. 2014).  Because a suit against a sheriff in his official capacity is tantamount to a suit against the county, the requirement to provide ante-litem notice "applies both to the counties and to the sheriffs, when sued in their official capacities."  <u>Moats v. Mendez</u>, 824 S.E.2d 808, 815 (Ga. Ct. App. 2019) (quoting <u>Davis v. Morrison</u>, 810 S.E.2d 649, 653 (Ga. Ct. App. 2018)); <u>see also, e.g.</u>, <u>Columbia County v. Branton</u>, 695 S.E.2d 674, 677 n.2 (Ga. Ct. App. 2010) ("Sheriff Whittle was sued only in his official capacity.  That is tantamount to a suit against the county.  Thus, the claims against Sheriff Whittle are not sustainable without the ante-litem notice."), *overruled on other grounds by* <u>Harrison v. McAfee</u>, 788 S.E.2d 872 (Ga. Ct. App. 2016).[7]  To satisfy the ante-litem notice requirement, a plaintiff must present "formal written notice of the claim."  <u>Warnell</u>, 763 S.E.2d at 286.

---

[7] The requirement, however, does not apply to claims made against governmental officers or agents in their individual capacities.  <u>See</u> <u>Strickland v. Wilson</u>, 421 S.E.2d 94, 96–97 (Ga. Ct. App. 1992) ("Where . . . a party seeks a money judgment holding a governmental officer or agent personally liable albeit for actions in his official capacity, that is a suit against the individual and not the government . . . .  [Thus,] Plaintiffs

Here, the incident giving rise to this case occurred on June 2, 2018, (doc. 9, p. 2), and Plaintiff filed his original Complaint almost two years later, on June 1, 2020, (doc. 1).  Thus, the one-year period to provide ante-litem notice expired well before Plaintiff filed this suit.  Plaintiff, however, has never claimed—in his pleadings or his Response to the Motion to Dismiss—that he ever sent an ante-litem notice to Defendants.  Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss any state law claims brought against Defendants in their official capacities based on Plaintiff's failure to comply with Georgia's ante-litem notice requirements.

### C.      Sovereign Immunity

Even if the Court found that Plaintiff provided timely and sufficient notice to Defendants in accordance with O.C.G.A. § 36-11-1, Plaintiff's state law claims against Defendants in their official capacities would still be barred by sovereign immunity.  In Georgia, "[s]uits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity."  Cameron v. Lang, 549 S.E.2d 341, 346 (Ga. 2001) (quotation omitted). "[S]overeign immunity . . . protects all levels of governments from legal action unless they have waived their immunity from suit."  Id.  Sovereign immunity extends "to the state and all of its departments and agencies," including counties.  Ga. Const. art. I, § II, para. IX(e); see also Gilbert v. Richardson, 452 S.E.2d 476, 479 (Ga. 1994) ("[W]e hold the . . . extension of sovereign immunity to 'the state and its departments and agencies' must also apply to the counties.") (quoting Ga. Const. art. I, § II, para. IX(e)).  Sovereign immunity "is not an affirmative defense . . . that must be established by the party seeking its protection.  Instead, immunity from suit is a privilege that is subject to waiver by the State, and the waiver must be established by the party seeking to benefit from the waiver."  Spalding County v. Blanchard, 620 S.E.2d 659, 660 (Ga. Ct. App. 2005)

were not compelled, by O.C.G.A. § 36-11-1, to notify [the sheriff] of the suit in advance of filing it against him.").

16

(internal quotations omitted).  Furthermore, "[b]ecause suits against county officials in their official capacities are in reality suits against the county," county officials, including sheriffs and their deputies, sued in their official capacities are entitled to sovereign immunity.  McDaniel v. Yearwood, No. 2:11-CV-00165-RWS, 2012 WL 526078, at *12 (N.D. Ga. Feb. 16, 2012) (citing Nichols v. Prather, 650 S.E.2d 380, 385 (Ga. Ct. App. 2007)); see also Ratliff v. McDonald, 756 S.E.2d 569, 573–74 (Ga. Ct. App. 2014) (ruling that sheriffs and their deputies sued in their official capacities are entitled to the protection of sovereign immunity in the absence of waiver).

Here, Plaintiff's state law claims against Defendants in their official capacities are tantamount to claims against Effingham County, and therefore, Defendants are entitled to sovereign immunity.[8]  See, e.g., Conway v. Jones, 836 S.E.2d 538, 540 (Ga. Ct. App. 2019) ("As a general rule, counties enjoy sovereign immunity. . . . And county officers sued in their official capacities—since a suit against a county officer in [his] official capacity is a suit against the county itself—enjoy the same sovereign immunity.") (omission and alteration in original) (quotation omitted).  Thus, Plaintiff has the burden to establish a waiver of sovereign immunity.  However, he failed to carry this burden.  Plaintiff does not raise any facts in his Amended Complaint indicating that sovereign immunity does not protect Defendants, nor does he allege that Defendants waived sovereign immunity, and he failed to even argue in his Response that sovereign immunity does not protect Defendants or that they waived such protection.  Therefore, Plaintiff failed to

---

[8]  The determination that Defendants are county officials entitled to assert the county's privilege of sovereign immunity has no impact on Defendants' status as arms of the state for purposes of Plaintiff's Section 1983 claims and Eleventh Amendment immunity.  See Lill v. Deal, No. 2:12-cv-175, 2014 WL 3697356, at *7 n.11 (S.D. Ga. July 23, 2014) ("The Court notes that for purposes of Plaintiff's [state law] claim, Sheriff Jessup in his official capacity is a county official 'entitled to assert the county's defense of sovereign immunity.'  This is true notwithstanding the Court's determination that he is an 'arm of the state' for purposes of Plaintiff's [Section] 1983 claim.") (internal citations omitted); McDaniel, 2012 WL 526078, at *12 ("[W]hile Sheriffs, under certain circumstances, may be characterized as state actors for purposes of liability under Section 1983, for purposes of liability under state law, sheriffs are officials of the county.") (citing Nichols, 650 S.E.2d at 384).

carry his burden to establish that Defendants waived sovereign immunity.  Accordingly, sovereign immunity is an alternative basis by which Plaintiff's state law claims against Defendants in their official capacities must be dismissed.

**IV.    State Law Claims against Defendant McDuffie in his Individual Capacity**

Defendants also argue that any state law claims Plaintiff brings against Defendant McDuffie in his individual capacity are barred by official—or "qualified"—immunity.  (Doc. 10-1, pp. 8–10.)   In Georgia, "[t]he doctrine of official immunity . . . offers public officers and employees limited protection from suit in their personal capacity."  Cameron, 549 S.E.2d at 344; see also Crosby v. Johnson, 779 S.E.2d 446, 450 (Ga. Ct. App. 2015) ("When a county official is sued in his individual capacity, the doctrine of official immunity . . . is implicated.").  Under the doctrine, state officers and employees "are immune from individual liability for discretionary acts undertaken in the course of their duties and performed without wil[l]fulness, malice, or corruption."  Reed v. DeKalb County, 589 S.E.2d 584, 587 (Ga. Ct. App. 2003).  In the context of official immunity, "actual malice means a deliberate intention to do a wrongful act."  Adams v. Hazelwood, 520 S.E.2d 896, 898 (Ga. 1999).  "Actual malice requires more than harboring bad feelings about another. . . .  [The] presence [of ill will] alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal."  Id. Evidence that shows "an intent to do the act purportedly resulting in the claimed injury" does not suffice.  Marshall v. Browning, 712 S.E.2d 71, 74 (Ga. Ct. App. 2011).  "Nor does actual malice encompass merely 'the reckless disregard for the rights and safety of others.'"  Gates v. Khokhar, 884 F.3d 1290, 1304 (11th Cir. 2018) (quoting West v. David, 767 F.3d 1063, 1073 (11th Cir. 2014)).  Instead, the record must show a defendant's "intent to cause the harm suffered by the plaintiffs."  Murphy v. Bajjani, 647 S.E.2d 54, 60 (Ga. 2007).

18

Here, Plaintiff alleges that Defendant McDuffie "has a policy which authorizes the use of force without legal cause;" "failed to make his deputies accountable for wrongful conduct;" and "hired and retained [Defendant Morris] with actual knowledge of his repeated misconduct involving the deprivation of civil rights while acting as a law enforcement officer." (Doc. 9, p. 3.) The acts of hiring, retaining, instructing, training, and supervising sheriff deputies as well as establishing use-of-force policies are discretionary functions rather than ministerial, proprietary, or administratively routine functions. See Harvey v. Nichols, 581 S.E.2d 272, 276 (Ga. Ct. App. 2003) (finding that a sheriff's responsibilities to oversee the operation of a jail, supervise the jail's employees and officers, and establish policies and procedures were discretionary functions); Russell v. Barrett, 673 S.E.2d 623, 629 (Ga. Ct. App. 2009) (finding that a sheriff's responsibility to "instruct, train, and supervise" deputies is a "discretionary governmental function"); Jackson v. Payne, 757 S.E.2d 164, 166 (Ga. Ct. App. 2014) ("[T]he operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function as opposed to a ministerial, proprietary, or administratively routine function."); Carter v. Glenn, 548 S.E.2d 110, 113 (Ga. Ct. App. 2001) ("[T]he act of establishing a policy in the first place is discretionary . . . .").

Plaintiff argues that official immunity does not bar any claims against Defendant McDuffie because he "alleged that the Defendant acted with actual malice with an intent to cause harm." (Doc. 11, p. 4.) While Plaintiff alleged in his Amended Complaint that Defendant *Morris* acted "with actual malice toward [him]," Plaintiff does not allege any facts in his Amended Complaint that support a plausible claim that Defendant McDuffie acted with actual malice. Plaintiff does not allege that Defendant McDuffie had any personal involvement in his arrest or that Defendant McDuffie even knew of the arrest when it occurred. (See doc. 9.) Furthermore, an allegation that

Defendant McDuffie is responsible for Defendant Morris's conduct does not amount to an allegation of actual malice or intent to harm.  See, e.g., Guerra v. Rockdale County, 420 F. Supp. 3d 1327, 1344 (N.D. Ga. 2019) ("An allegation that Defendant Levett is somehow vicariously liable for his deputies' conduct because of his position certainly does not allege actual malice or intent to harm.").  Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss any state law claims brought against Defendant McDuffie in his individual capacity.

## CONCLUSION

For the reasons set forth above, the Court **DENIES AS MOOT** Defendants' Motion to Dismiss the original complaint.  (Doc. 4.)  The Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss Plaintiff's Amended Complaint.  (Doc. 10.)  Specifically, the Court **DISMISSES** all state law claims against Defendant McDuffie in his individual capacity as well as all state law claims and all federal law claims against either of the Defendants in their official capacities.  Thus, the only plausible claims that remain pending before the Court would be state law claims asserted against Defendant Morris in his individual capacity and any federal law claims asserted against either Defendant in his individual capacity.  Unfortunately, given Plaintiff's inartful pleading, what remains of the Amended Complaint at this point is, at best, a shotgun pleading.  Accordingly, the Court **ORDERS** Plaintiff to file, within **SEVEN (7) DAYS** of this Order, a comprehensive operative complaint entitled "Plaintiff's Second Amended Complaint." Therein, Plaintiff shall: (1) identify—using separate numbered counts—the specific cause(s) of action which he intended to assert in his Amended Complaint *and* which remain(s) viable in light of the Court's analysis and dismissal, above;[9] and (2) identify the specific constitutional amendment(s), if any, that Plaintiff contends were violated, being sure to specify which

_____

[9]  Accordingly, Plaintiff is not entitled to assert any claims against either Defendant in his official capacity, nor any state law claims against Defendant McDuffie in his individual capacity.

Defendant(s) Plaintiff contends violated each amendment and how he claims the Defendant(s) violated the specified amendment.  Plaintiff **SHALL NOT** make any additions, modifications or other amendments to his Amended Complaint other than those explicitly ordered herein.  This is not an opportunity for Plaintiff to assert new claims or to name new defendants.  Defendants **SHALL** file an answer or other responsive pleading within **TWENTY-ONE (21) DAYS** of Plaintiff's date of filing.  Plaintiff is hereby advised that the failure to timely file this Second Amended Complaint that comports with the instructions outlined herein may result in the dismissal of his case.

  **SO ORDERED**, this 28th day of May, 2021.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA