# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

RICHARD HUDSON,

        Plaintiff,

    v.

PRESTON MORRIS; and JIMMY
MCDUFFIE, Sheriff of Effingham County,

        Defendants.

CIVIL ACTION NO.: 4:20-cv-120

## O R D E R

This action is before the Court on Defendant Preston Morris and Defendant Jimmy McDuffie's Motion to Dismiss Plaintiff Richard Hudson's Second Amended Complaint pursuant to Federal Rules of Civil Procedure 8, 10, and 12.[1]  (Doc. 19.)  Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his rights under the Fourth and Fourteenth Amendments.  (Doc. 17.)  Plaintiff's claims arise out of an incident during which Defendant Morris, a deputy sheriff with the Effingham County Sheriff's Department, allegedly battered Plaintiff while he was handcuffed.  (Id. at p. 2.)  Defendants move for the dismissal of Plaintiff's suit on the bases that the Second Amended Complaint constitutes a shotgun pleading and that Plaintiff failed to follow the Court's instructions in its May 28, 2021, Order.  (Doc. 19.)  For the following reasons, the Court **GRANTS** Defendants' Motion to Dismiss the Second Amended Complaint.  (Id.)

## BACKGROUND

According to the allegations contained in the Second Amended Complaint, the events giving rise to this suit occurred on June 2, 2018.  (Doc. 17, p. 2.)  On that day, while carrying out

---

[1]  Defendants alternatively move for a more definite statement pursuant to Rule 12(e).  (Doc. 19, p. 1 n.1.)

the arrest of Plaintiff, Defendant Morris, who at that time was a deputy sheriff in Effingham County, "repeatedly struck [Plaintiff] in the face and head" after Plaintiff's hands had been handcuffed behind his back.  (Id.)  Defendant Morris also used "racial slurs" when speaking to Plaintiff.  (Id. at p. 3.)

On June 1, 2020, Plaintiff initiated this action against Defendants pursuant to 42 U.S.C. § 1983. (Doc. 1.)  Defendants filed a Motion to Dismiss Plaintiff's original Complaint on September 18, 2020.  (Doc. 4.)  Before this Court ruled on that Motion, Plaintiff filed a First Amended Complaint, alleging that Defendant Morris's "wrongful assault and battery" and use of excessive force "caused . . . Plaintiff to be deprived of his constitutional rights, including but not limited to the rights afforded in the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution."  (Doc. 9, pp. 2–3.)  Plaintiff also alleged in the First Amended Complaint that Defendant McDuffie is liable for Defendant Morris's conduct because he, as Sheriff of Effingham County, either "has a policy which authorizes the use of force without legal cause or . . . failed to adopt a policy prohibiting the use of force except under appropriate circumstances."  (Id. at p. 3.)  Plaintiff further alleged that Defendant McDuffie is "liable in his official capacity as Sheriff because he has failed to make his deputies accountable for wrongful conduct" and because "he hired and retained [Defendant Morris] with actual knowledge of his repeated misconduct involving the deprivation of civil rights while acting as a law enforcement officer."  (Id.)

After Plaintiff filed his First Amended Complaint, Defendants filed a Motion to Dismiss the Amended Complaint, arguing, among other things, that the First Amended Complaint constituted an impermissible shotgun pleading.  (See doc. 10-1.)  The Court granted in part and denied in part Defendants' Motion to Dismiss the First Amended Complaint.[2]  (Doc. 15.)

---

[2]  The Court also denied as moot Defendants' Motion to Dismiss the original complaint, (doc. 4).  (Doc. 15.)

Specifically, the Court dismissed all Section 1983 claims alleged against Defendants in their official capacities, (id. at p. 15), any state law claims alleged against Defendants in their official capacities, (id. at pp. 16, 18), and any state law claims alleged against Defendant McDuffie in his individual capacity, (id. at p. 20).  The Court then ordered Plaintiff to file a "comprehensive operative complaint entitled 'Plaintiff's Second Amended Complaint,'" in which he was required to:

> (1) identify—using separate numbered counts—the specific cause(s) of action which he intended to assert in his Amended Complaint *and* which remain(s) viable in light of the Court's analysis and dismissal . . .; and (2) identify the specific constitutional amendment(s), if any, that Plaintiff contends were violated, being sure to specify which Defendant(s) Plaintiff contends violated each amendment and how he claims the Defendant(s) violated the specified amendment.

(Id. at pp. 20–21.)[3]  The Court further instructed Plaintiff that he "**SHALL NOT** make any additions, modifications or other amendments to his Amended Complaint other than those explicitly ordered herein" and that "[t]his is not an opportunity for Plaintiff to assert new claims or to name new defendants."  (Id. at pp. 21.)

Plaintiff subsequently filed the Second Amended Complaint.  (Doc. 17.)  In the Second Amended Complaint, Plaintiff alleges two counts.  (Id. at pp. 2–4.)  In Count I, which appears to be asserted solely against Defendant Morris, Plaintiff alleges that Defendant Morris "repeatedly struck him in the face and head" and that "the seizure of his person and the use of unnecessary and excessive force violated [his] rights under the Fourth and Fourteenth Amendments to the United States Constitution."  (Id. at p. 2.)  Count I further alleges that Defendant Morris "committed a

---

[3]  Based on the Court's analysis and dismissal, the only plausible claims that could have remained pending before the Court were "state law claims asserted against Defendant Morris in his individual capacity and any federal law claims asserted against either Defendant in his individual capacity." (Doc. 15, p. 20.)  Thus, the Court specifically instructed Plaintiff that he was "not entitled to assert any claims against either Defendant in his official capacity, nor any state law claims against Defendant McDuffie in his individual capacity."  (Id. at p. 20 n.9.)

battery upon Plaintiff" and "acted with actual malice in . . . using racial slurs directed toward" Plaintiff.  (Id. at pp. 2–3.)  In Count II, which appears to be asserted solely against Defendant McDuffie, Plaintiff alleges that Defendant McDuffie violated Plaintiff's rights "under the Fourth and Fourteenth Amendments to the United States Constitution."  (Doc. 17, p. 3.)  Specifically, Count II alleges that Defendant McDuffie is liable because (1) he "has a policy which authorizes or condones the use of force without legal cause or . . . has failed to adopt or enforce a policy prohibiting the use of force except under appropriate circumstances"; (2) "he has failed to make his deputies accountable for wrongful conduct, which shows a willful and deliberate indifference for the rights of citizens"; and (3) he hired and retained Defendant Morris with "actual knowledge of his repeated use of force causing the deprivation of civil rights while acting as a law enforcement officer," conduct for which he allegedly may be held liable under Monell v. Dep't of Social Servs. of the City of New York, 416 U.S. 232 (1974).  (Doc. 17, pp. 3–4.)

Defendants filed a Motion to Dismiss the Second Amended Complaint, arguing that the Court should dismiss Plaintiff's suit with prejudice because Plaintiff failed to comply with the Court's instructions and because the Second Amended Complaint constitutes a shotgun pleading. (Doc. 19).  Plaintiff filed a Response, generally arguing that the Second Amended Complaint is not a shotgun pleading and complies with the Court's instructions.  (Doc. 22.)

## DISCUSSION

Defendants contend that the Second Amended Complaint (1) fails to identify the causes of action using separate numbered counts; (2) asserts multiple causes of action that are "no longer viable following the Court's analysis and dismissal"; (3) fails to identify the specific constitutional amendments that Plaintiff contends were violated, which Defendant violated the specific amendment, and how each Defendant violated that amendment; and (4) alleges new causes of

action in violation of the Court's explicit instruction.  (Doc. 19, pp. 2–6.)  Plaintiff responds that Count I "clearly sets forth an excessive force" claim under the Fourth Amendment and Count II alleges that Defendant McDuffie "is liable for the conduct of [Defendant] Morris because of the failure to have policies prohibiting excessive force and failing to hold deputies accountable for the wrongful conduct."  (Doc. 22, pp. 1–2.)  Plaintiff argues that the First Amended Complaint alleged the same and that this conduct violates his rights under the Fourteenth Amendment.  (Id. at p. 2.)

## I.     Applicable Law

A district court may dismiss a plaintiff's claims pursuant to Federal Rule of Civil Procedure 41(b).  Coleman v. St. Lucie Cnty. Jail, 433 Fed. App'x 716, 718 (11th Cir. 2011) (citing Fed. R. Civ. P. 41(b) and Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1337 (11th Cir. 2005)).  Rule 41(b) allows for the involuntary dismissal of a plaintiff's claims where he has failed to prosecute those claims, to comply with the Federal Rules of Civil Procedure or local rules, or to follow a court order.  Fed. R. Civ. P. 41(b); see also Coleman, 433 Fed. App'x at 718; Sanders v. Barrett, No. 05-12660, 2005 WL 2640979, at *1 (11th Cir. Oct. 17, 2005) (citing Kilgo v. Ricks, 983 F.2d 189, 192 (11th Cir. 1993)).  Furthermore, "[a] district court has the inherent authority to control its docket and ensure the prompt resolution of lawsuits, which includes the ability to dismiss a complaint on shotgun pleading grounds."  Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018) (internal quotations omitted).  Shotgun pleadings are pleadings that violate either Federal Rule of Civil Procedure 8(a)(2)[4] or 10(b).[5]  Weiland v. Palm Beach Cnty. Sheriff's

---

[4]  Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

[5]  Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense."  Fed. R. Civ. P. 10(b).

Off., 792 F.3d 1313, 1320 (11th Cir. 2015).  The United States Court of Appeals for the Eleventh Circuit has identified "four rough types" of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts;" (2) a complaint that contains "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) a complaint that fails to "separat[e] into a different count each cause of action or claim for relief;" and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."  Id. at 1321–23.  "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  Id. at 1323.

"When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must *sua sponte* give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds."  Vibe Micro, Inc., 878 F.3d at 1296.  "In the repleading order, the district court should explain how the offending pleading violates the shotgun pleading rule so that the party may properly avoid future shotgun pleadings."  Id.  "[I]f the party has still [not] filed a *compliant* pleading," a district court may dismiss the complaint with prejudice.  Id. (emphasis added).

## II.    The Second Amended Complaint

In the Court's May 28, 2021, Order, the Court noted that the First Amended Complaint "share[d] many characteristics of a shotgun pleading," including the failure to clearly state each cause of action, the failure to separate each claim into separate counts, and the failure to explicitly provide the exact legal basis for each claim.  (Doc. 15, p. 11.)  While Plaintiff did add the labels

"Count One" and "Count Two" in the Second Amended Complaint, the Seconded Amended
Complaint is "hardly clearer or more accurate" than the First Amended Complaint.  Adams v.
Huntsville Hosp., No. 5:20-CV-00016-CLS, 2020 WL 1285545, at *2 (N.D. Ala. Mar. 18, 2020).
In Count I, Plaintiff appears to allege multiple possible claims.  Plaintiff alleges an excessive force
claim under the Fourth and Fourteenth Amendments.  (Doc. 17, p. 2.)  Plaintiff also appears to
assert a separate claim for the unlawful seizure of his person by alleging that "the seizure of his
person *and* the use of unnecessary and excessive force violated [his] rights under the Fourth and
Fourteenth Amendments."[6]  (Id. (emphasis added).)  Plaintiff then alleges, also within Count I,
that Defendant Morris "committed a battery upon . . . Plaintiff when he repeatedly struck [him]
without legal authority."[7]  (Id.)  However, Plaintiff does not specify, either within the Second
Amended Complaint or his Response, whether this allegation is part of the Section 1983 excessive
force claim or a separate tort claim under state law.  (See docs. 17, 22.)

Additionally, in Count II, Plaintiff appears to allege several possible claims, including
Section 1983 supervisor liability for negligent hiring, negligent retention, and the failure to hold
"deputies accountable for wrongful conduct."  (Doc. 17, pp. 3–4.)  Plaintiff also appears to allege
a claim under Monell v. Department of Social Services, 436 U.S. 658 (1978).[8]  (Id. at p. 4.)

---

[6]  The lack of clarity as to the unlawful seizure allegation is especially troubling given the fact that the
Eleventh Circuit recognizes a distinction between a claim that excessive force was used during the course
of an illegal stop and a claim that excessive force was used during a legal detention by law enforcement.
Specifically, in the Eleventh Circuit, "[an] excessive force claim is subsumed in [an] illegal stop or arrest
claim . . . where a plaintiff contends the force was excessive because there was no basis for any force
[because the stop or arrest was illegal]."  Jackson v. Sauls, 206 F.3d 1156, 1171 (11th Cir. 2000).
"However, . . . a claim for excessive force during a legal stop or arrest is a discrete claim."  Id.

[7]  As explained in the previous footnote, Plaintiff likely cannot state a distinct claim for battery if he is
alleging that his seizure was illegal, as any claim for damages based on use of force would be subsumed
into the illegal seizure claim.  See Jackson, 206 F.3d at 1171.

[8]  Whether Plaintiff intended to allege a claim under Monell is unclear.  The Second Amended Complaint
cites to "Monell v. Department of Social Services of the City of New York, 416 U[.]S[.] 232 (1974)."  (Doc.
17, p. 4.)  However, the correct citation to Monell v. Department of Social Services is 436 U.S. 658 (1978).

These are the same deficiencies that plagued the First Amended Complaint. (Doc. 15, p. 11 ("Plaintiff's [First] Amended Complaint does not clearly state each cause of action, does not separate each claim into separate counts, and does not explicitly provide the exact legal basis for each claim.").) As the Court explained in its prior Order, these deficiencies render a pleading an impermissible shotgun pleading. See Adams, 2020 WL 1285545, at *2 ("Although plaintiff now labels his counts, they are hardly clearer or more accurate. Counts 1 and 2 assert claims under the Rehabilitation Act of 1973 and the Americans with Disabilities Act, but these counts also contain allegations of false imprisonment and denial of liberty without due process under the U.S. Constitution and Alabama statutes cited later in [the] Complaint. . . . This type of 'shotgun' pleading fails 'to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'") (internal quotations omitted) (quoting Weiland, 972 F.3d at 1323); Pinto v. Collier County, No. 2:19-cv-551-FtM-60MRM, 2019 WL 5722172, at *2 (M.D. Fla. Nov. 5, 2019) ("Plaintiff . . . improperly lumps multiple constitutional violations into Count XV, where he alleges a 1983 violation based on unofficial customs that caused Plaintiff to be deprived of his constitutional right to . . . be free from illegal or unreasonable searches and seizures, including the use of excessive force. Additionally, in this count, Plaintiff appears to allege negligent hiring, negligent training, negligent retention, and negligent supervision. This improper mixing of claims makes it difficult for Defendants to respond accordingly and present defenses.").

Moreover, the Second Amended Complaint appears to allege at least one claim that is no longer viable in light of the Court's previous Order. As stated above, Count II appears to allege a

---

The citation in Count II—416 U.S. 232 (1974)—is the citation for the United States Supreme Court's decision in Scheuer v. Rhodes, a case in which the Supreme Court discussed the difference between the Eleventh Amendment qualified immunity protections afforded to employees sued in their official versus their individual capacities. Scheuer v. Rhodes, 416 U.S. 232, 247 (1974).

claim under <u>Monell v. Department of Social Services</u>, 436 US. 658 (1978).  However, considering the Court's ruling in its prior Order, any claim under <u>Monell</u> is no longer proper in this case.  In <u>Monell</u>, the United States Supreme Court held that local governments and local government officials sued in their *official capacities* are "persons" under Section 1983 and, thus, not entitled to "absolute immunity."  <u>Monell</u>, 436 U.S. at 690; <u>id.</u> at 690 n.5.  Thus, the Court construes Plaintiff's claim that Defendants are "liable under the holding of the Supreme Court . . . in <u>Monell</u>" as a claim against Defendants in their official capacities.  (Doc. 17, p. 4.)  However, the Court already dismissed "all federal law claims against either of the Defendants in their official capacities" and instructed Plaintiff that he is "not entitled to assert any claims against either Defendant in his official capacity."  (Doc. 15, p. 20; <u>id.</u> at p. 20 n.9.)  Thus, the <u>Monell</u> claim is foreclosed by the Court's prior Order, and Plaintiff has violated the Court's explicit instructions by asserting it in the Second Amended Complaint.  (<u>Id.</u>)

In its prior Order, the Court warned Plaintiff that the First Amended Complaint constituted an impermissible shotgun pleading, listed the reasons why, and provided Plaintiff with an opportunity to correct those deficiencies.  (Doc. 15, p. 20.)  The Court then specifically instructed Plaintiff that the Second Amended Complaint must (1) "identify—using separate numbered counts—the specific cause(s) of action which he intended to assert in his Amended Complaint *and* which remain(s) viable in light of the Court's" Order, and (2) "identify the specific constitutional amendment(s), if any, that Plaintiff contends were violated, being sure to specify which Defendant(s) Plaintiff contends violated each amendment and how he claims the Defendant(s) violated the specified amendment."  (<u>Id.</u>)  The Court also instructed Plaintiff that he was "not entitled to assert any claims against either Defendant in his official capacity."  (<u>Id.</u> at p. 20 n.9.)  As discussed above, the Second Amended Complaint wilfully fails to correct the deficiencies of

the First Amended Complaint and violates the Court's explicit instructions to Plaintiff.  Thus, providing Plaintiff another opportunity to file an amended complaint will not remedy the defects the Court has now repeatedly noted.  Thus, the Court will not permit Plaintiff another opportunity to correct his pleading.  See Fed. R. Civ. P. 41(b) ("If the plaintiff fails . . . to comply with . . . a court order, a defendant may move to dismiss the action or any claim against it."); Weiland, 792 F.3d at 1321 n.10 ("Where a plaintiff fails to make meaningful modifications to [his] complaint, a district court may dismiss the case under the authority of either Rule 41(b) or the court's inherent power to manage its docket."); Jackson v. Bank of Am., N.A., 898 F.3d 1348, 1359 n.13 (11th Cir. 2018) ("The District Court . . . had the authority to dismiss the complaint under Rule 41(b), which allows for dismissal for failure to obey a court order.  And given Mr. Lay's willful disregard of the Court's order to file a more definite statement and this Circuit's voluminous precedent decrying shotgun pleadings, dismissal *with prejudice* pursuant to Rule 41(b) was appropriate.") (internal citations omitted); see also, e.g., Vibe Micro, Inc., 878 F.3d at 1297 ("Mandel is not entitled to another chance to replead.  The district court *sua sponte* gave him an opportunity to correct the shotgun pleading issues in his complaint, and provided him with specific instructions on how to properly do so.  He did not fix it.  We will not adopt a rule requiring district courts to endure endless shotgun pleadings.").  Accordingly, the Court **DISMISSES with prejudice** Plaintiff's federal law claims against Defendants.  See Liebman v. Deutsche Bank Nat'l Trust Co., 462 F. App'x 876, 879 (11th Cir. 2012) ("[T]he district court instructed the Liebmans to file an amended complaint, curing these deficiencies.  The Liebmans failed to comply with the court's instruction. The court was therefore permitted to dismiss the complaint for failure to comply with its order.").

To the extent Plaintiff has asserted any state law claims alleged in the Second Amended Complaint, the Eleventh Circuit has stated that "[w]hen all federal claims are dismissed before

trial, a district court should typically dismiss the pendant state claims as well."  Vibe Micro, Inc., 878 F.3d at 1296.  Indeed, "if [a] district court . . . chooses to dismiss the state law claims, it usually should do so without prejudice."  Id.; see also Whitchurch v. Elarbee Thompson Wilson & Sapp, LLP, 814 F. App'x 547, 549–50 (11th Cir. 2020) ("[W]hen a district court dismisses the claims in a complaint with prejudice on shotgun pleading (and therefore non-merits) grounds, it should dismiss any state law claims without prejudice so they can be refiled in state court.  That is so even if the plaintiff was given the chance to amend the state law claims and failed to do so.") (citing Vibe Micro, Inc., 878 F.3d at 1296–97).  Thus, the Court **DISMISSES without prejudice** any state law claims alleged in the Second Amended Complaint.

### CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion to Dismiss the Second Amended Complaint.  (Doc. 19).  The Court **DISMISSES with prejudice** any federal claims alleged in the Second Amended Complaint and **DISMISSES without prejudice** any state law claims alleged in the Second Amended Complaint.  The Court **DIRECTS** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

**SO ORDERED**, this 4th day of February, 2022.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA